Ryan A. Hamilton
NV BAR NO. 11587
HAMILTON LAW
5125 S. Durango Dr., Ste. C
Las Vegas, NV 89113
(702) 818-1818
(702) 974-1139
ryan@hamiltonlawlasvegas.com

*Attorney for the plaintiffs,*
*Harry, Lauren, and Peter Geanacopulos*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| HARRY GEANACOPULOS, a Massachusetts Citizen; LAUREN GEANACOPULOS, a Massachusetts Citizen; and PETER GEANACOPULOS, a Massachusetts Citizen,<br><br>Plaintiffs,<br><br>vs.<br><br>NARCONON FRESH START d/b/a RAINBOW CANYON RETREAT; ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL;NARCONON INTERNATIONAL and DOES 1-100, ROE Corporations I – X, inclusive,<br><br>Defendants. | Case No.  2:14-CV-00629-JCM-NJK<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiffs Harry, Lauren, and Peter Geanacopulos ("Plaintiffs"), by and through their cousnel, Ryan Hamilton of HAMILTON LAW, LLC, allege the following:

**I.**

**PARTIES**

1. Plaintiffs were, and at all relevant times to this Complaint are, citizens of Massachusetts.

1

2.     Defendant Narconon Fresh Start (hereafter "Narconon"), is, and at all times relevant to this Complaint was, a corporation incorporated under the laws of, and with its principal place of business in, the State of California. Defendant has been at all relevant times transacting business in Caliente, Lincoln County, Nevada. Narconon Fresh Start may served with process through its registered agent, Mark Kirwin, 4480 Market St., Ste. 804, Ventura, CA 93003.

3.     Defendant Narconon International ("NI") is a California corporation with its headquarters in Los Angeles, California.

4.     NI is the parent/licensor of Defendant Narconon Fresh Start. NI exercises control over the time, manner, and method of Fresh Start's operations.

5.     NI was doing business in the State of Nevada by and through its agent and subsidiary/licensee Defendant Narconon Fresh Start. NI may be served with process through its registered agent, Sherman D. Lenske, 6400 Canoga Ave., Suite 315, Woodland Hills, CA 91367.

6.     Fresh Start and NI are subsidiaries of the Association for Better Living and Education ("ABLE"). ABLE oversees the drug rehabilitation, education, and criminal justice activities of the Church of Scientology including, but not limited to, Fresh Start and NI.

7.     Defendant ABLE is a corporation registered in the State of California with its headquarters in Los Angeles, California.

8.     ABLE controls the time, manner, and method of NI's and Fresh Start's businesses by actively managing their daily operations, including conducting inspections of Narconon centers and creating, licensing, and approving their marketing materials.

9.     ABLE transacts business in the State of Nevada by and through its agents, Narconon International and Narconon Fresh Start. ABLE may be served with process through its registered agent, Sherman D. Lenske, 6400 Canoga Ave., Suite 315, Woodland Hills, CA 91367.

10.    Plaintiff is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendant DOES 1-100, inclusive, and, therefore, sues these

Defendants by fictitious names.  Plaintiffs will seek leave of this Court to amend this Complaint when the identities of these Defendants are ascertained.

## II.

## **JURISDICTION AND VENUE**

11. This Court has subject jurisdiction pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000.00, and there is complete diversity between the parties.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the events and omissions giving rise to this lawsuit occurred in this District, and the Court has personal jurisdiction over each of the parties as alleged throughout this Complaint.

## III.

## **FACTUAL ALLEGATIONS**

13. On or about November 27, 2013, Harry and Lauren Geanacopulos spoke on the telephone with Narconon representative Dan Carmichael about finding drug and addiction counseling for their son, Peter Geanacopulos. Carmichael recommended that Peter enter Defendants' program for treatment.

14. Carmichael referred to the program only as "Fresh Start" and never called it "Narconon."

15. Carmichael represented that the "Fresh Start" program has more than a 76 % success rate.

16. Carmichael also represented that at "Fresh Start" there would be a licensed physician on the premises at all times. Carmichael further represented that Peter would receive extensive counseling for substance abuse in a state-of-the art facility.

17. Carmichael referred Plaintiffs to the Rainbow Canyon Retreat website, www.rainbowcanyonretreat.org. The website repeated the representations Carmichael made about the program.

18. The website also represented that the program that religion is not a part of the program.

19. Further, the website represented that the program's detoxification and purification program, the "New Life Detoxification Program," "removes all drug residue in the body, which are the major causes of cravings and relapse."

20. The website further explained how the sauna program works:

> [t]hrough research done since the early 1960s it has been found that drugs, once taken, leave residues in the body's fat tissues. These residues remain in the body for years after taking a drug. This is the reason for the occurrence of "acid flashbacks" among LSD users. These drug residues also play a large in addict's physical craving for a particular drug. Through vitamins, oils, exercise, and sweating, our sauna program cleans out a users [sic] system, leaving them free of physical drug cravings and healthier than they have felt in years.

http://www.rainbowcanyonretreat.org/faq.html.

21. Based on these representations, Plaintiffs agreed to send Peter to the "Fresh Start" program in Nevada and paid $30,000 upfront for the program.

22. Plaintiffs also executed the contract attached hereto as **Exhibit A**.

23. The contract describes the founding of the Narconon program as follows:

> The Narconon Program was founded in 1966 by William Benitez, where it was first used in the Arizona State Prison, after being inspired by the practical betterment philosophy of author and humanitarian L. Ron Hubbard in the book, The Fundamentals of Thought. After reforming himself through the use of this new and innovative rehabilitation technology and establishing the Narconon program, Mr. Benitez found a new purpose in life by helping people not only rehabilitate themselves from drug addiction, but more importantly, restore their personal values, integrity, and responsibility. The Narconon Program is secular [NON-RELIGIOUS] in nature and the program does not include participation in any religious studies of any kind.

24. The actual title of the L. Ron Hubbard Book to which the contract refers is "<u>Scientology: The Fundamentals of Thought</u>."

4

25.     The Church of Scientology, on its website, describes <u>Scientology: Fundamentals of Thought</u> as being "designated by L. Ron Hubbard as *The Book One of Scientology*." (emphasis in original).  http://www.scientology.org/books/catalog/beginning-books/product.html

26.     On arriving at the Caliente facility, Narconon had Peter sign documents purporting to take away his legal rights despite the fact that he was still under the influence of drugs. Peter objected, but Narconon threatened that he would receive no treatment unless he signed the documents.

27.     Narconon never sent Plaintiffs copies of the papers Peter was forced to sign on arriving at the Narconon facility.

28.     Narconon staff also had Peter stop taking prescription medication that he had taken for several years. Narconon had Peter stop taking this medication "cold turkey."

29.      Peter then went through withdrawal in area facility known as the "Treehouse." There were no medical personnel overseeing his withdrawal. After completing withdrawal, Peter began the Narconon treatment program.

28.     Despite Narconon's representation that it is a secular program, Narconon had Peter unwittingly practicing and studying Scientology in place of counseling and treatment for substance abuse.

29.     Narconon Fresh Start had Peter study books written by, or based on the works of, L. Ron Hubbard.

30.     The books in the Narconon program teach Scientology doctrines and concepts.

31.     Narconon Fresh Start did not provide Peter any substance abuse treatment despite its promises to Plaintiffs he would receive extensive counseling.

32.     Narconon Fresh Start also had Peter undergo its sauna program. Narconon calls this program the "New Life Detoxication" program.

33.     Narconon's "New Life Detoxification" program is identical to the Scientology ritual known as "Purification Rundown," or the "Purif."

5

34     Under the New Life Detoxification program, students first exercise vigorously before entering the sauna each day. On entering the sauna, Narconon requires each student to ingest increasing doses of Niacin and a "vitamin bomb." Narconon increased Peter's dosages of Niacin well beyond the recommended daily allowance.

35.    Narconon requires students to spend six hours per day for five weeks in a sauna at temperatures between 160 and 180 degrees Fahrenheit.

36.    There are no medical personnel overseeing Narconon students undergoing the sauna program.

37.    Narconon claims that its sauna program has been scientifically shown to flush out residual drug toxins stored in fatty tissue thereby reducing or eliminating a person's drug cravings.

38.    Not only does Narconon's New Life Detoxification fail to live up to Narconon's claims about its benefits, the sauna program is dangerous. By having students ingest extreme doses of Niacin and other vitamins while sitting in extreme temperatures for hours, the sauna program unnecessarily exposes students to serious health risks including severe dehydration.

39.    In a prior lawsuit, Dr. Louis A. Casal, an expert **retained by** Narconon International and Narconon of Northern Georgia in a wrongful death suit filed against those entities, testified at his deposition. The relevant portions of Dr. Casal's deposition testimony are attached hereto as **Exhibit B.** When asked under oath about Narconon's sauna program, he testified that there is no scientific basis for the notion that sweating in a sauna detoxifies a person's body or treats addiction:

Q.     Have you looked at the Narconon literature on what Narconon contends the benefits from the sauna are?

A. [Dr. Casal]  Yes, I have.

Q.     And the sauna program, what Narconon contends is that in – it in fact detoxifies your body. True?

6

1  A. True.

2  Q. But there's no scientific basis that you can point me to to support that contention, is
3 there, sir?

4  A. You're correct.

5  Q. So when Narconon states that the sauna program detoxifies its students, you're not
6 aware, as a medical doctor, of any scientific basis for that contention?

7  A. I agree.

8 Exhibit B, Deposition of Dr. Louis Casal, 136: 21 – 137:9.

9 40. Despite their own expert's admission that there is no scientific basis for the idea that
10 patients sweating in the New Life Detoxification Program treats addiction, Narconon continues to
11 represent to prospective patients, as they did to Plaintiffs, that the New Life Detoxification has
12 been "scientifically and medically proven" as effective.

13 41.  Narconon claims a success rate of over 70% for all Narconon centers, including Narconon
14 Fresh Start d/b/a Rainbow Canyon Retreat. Narconon has published no studies or other verifiable
15 evidence to support their claimed success rates.

16 42. Dr. Casal, the medical expert retained by Narconon International in another lawsuit,
17 testified at his deposition that he was not convinced Narconon's claimed success rate was true:

18  Q. Okay. What are you relying on – well, let me ask you this; do you believe that 76
19 percent success ratio is accurate?

20  A. [Dr. Casal].  Mr. Harris, I'll be honest with you, that's a big number.

21  Q. Yeah, it's -- it's a real big number.

22  A. It's a big number.

23  Q. And it's completely inconsistent –

24  A. I – I hope it's true, but, I mean, I would need some convincing.

25 …

7

Q. Okay. Do you have any idea where Narconon is getting the numbers that it's using?

A. You know, in the interest of time – I just didn't have enough time to delve deeper into those studies, Mr. Harris. And I – I would be happy to, but, no, I don't have a clear understanding of where that 70 – 70-something number came from, no, sir.

Exhibit B, Deposition of Dr. Louis Casal, 124:21 – 125:5; 126:1 – 7.

43. Defendants are well aware that there is no support for Narconon Fresh Start's claimed success rate, but nonetheless advertised a more than 70% success rate to Harry and Lauren Geanacopulos despite that awareness.

44. Narconon documents indicate that the Narconon program is used to recruit patients into the Church of Scientology. For example, a Narconon titled the "Narconon Technical Line-Up" provides a flow chart of a patient's experience into and through the Narconon program. The document shows that when a patient finishes the Narconon program, the patient is to be "route[d] to the nearest Org for further services if the individual so desires." "Org" is Scientology jargon for an individual church providing services for the Church of Scientology.  A copy of the "Narconon Technical Line-up" is attached hereto as **Exhibit C**.

45. Narconon considers its Narconon program to be the "Bridge to the Bridge." That is, Narconon considers its program to be an initial step into getting on Scientology's "Bridge to Total Freedom," the key spiritual journey that practitioners of the Scientology religion undertake.  See, e.g., "Narconon News, 1974, Volume 6, Issue 3: Narconon Is The Bridge to The Bridge," attached hereto as **Exhibit D**.

46. Despite Narconon Fresh Start's representations that Peter would receive counseling, at no point did Narconon staff ever speak to Peter about the specifics of his life or his drug use and its causes. In fact, no one at Narconon ever spoke to Peter about his substance abuse at all.

47. Instead, counselors at the Narconon center attempted to treat Peter using only Scientology.

48. While undergoing the sauna program, Peter began to experience strange heart palpitations. He reported the palpitations to Narconon staff who took him to see a doctor in Caliente, Nevada.

49. The doctor told Peter, in the presence of a Narconon staff member, that the doctor believed the high doses of Niacin Peter was receiving were causing his palpitations. The doctor recommended drastically reducing the Niacin or stopping it altogether.

50. Despite the doctor's recommendation regarding Niacin, Narconon had Peter continue ingesting high doses of Niacin in accordance with its sauna program.

51. Peter continues to have heart palpitations and is under the care of a cardiologist.

52. Plaintiff Lauren Geanacopulos visited her son shortly after he completed the sauna program. When she learned what was actually happening at the program – as opposed to what she was being told by Narconon – she took Peter out of the program.

## **ALTER EGO LIABILITY**

53. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

54. Defendants Narconon Fresh Start and NI have all appearances of being a corporate sham illusion and mere instrumentalities of Defendant ABLE.

55. ABLE heavily influences Narconon Fresh Start and NI and governs and controls nearly every aspect of their business activities.

56. There is such unity of interest and ownership among Narconon Fresh Start, NI, and ABLE that they are inseparable from one another.

57. The separate corporate existences of Narconon Fresh Start, NI, and ABLE is a design or scheme to perpetrate a fraud. The separate corporate existences of Narconon Fresh Start, NI, and ABLE is a scheme to fraudulently induce patients to enroll in one of their treatment facilities and pay substantial funds. Further, Defendants perpetrate this scheme to recruit for and promote the Scientology religion.

58.     It is interests of justice to disregard the corporate shield and treat Defendants Narconon Fresh Start, NI, and ABLE as identical. Accordingly, each cause of action listed below is made against all Defendants.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

59.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

60.     Defendants contracted with Plaintiffs Harry and Lauren Geanacopulos to provide, in exchange for consideration, secular, residential drug and alcohol treatment.

61.     Defendants breached this contract by, *inter alia*: (i) failing to provide services constituting drug and alcohol treatment; and (ii) providing Scientology in lieu of drug and alcohol treatment.

62.     Defendants' breaches have caused Plaintiffs to suffer damages in excess of $75,000.00.

## SECOND CAUSE OF ACTION

## FRAUD

63.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

64.     The following is a non-exhaustive list of false representations Defendants knowingly made to the Plaintiffs: (i) that the Narconon Fresh Start program has a 76% success rate; (ii) that the Narconon program is secular and does not involve the study or practice of any religion; (iii) that Peter would receive counseling related to substance abuse; (iv) that Narconon's sauna program*, i.e*, the Purification Rundown, is safe and has been scientifically shown to be effective; and (v) that Peter would be under the supervision of doctors or nurses at all during times during the program.

65.     Dan Carmichael, a Narconon employee, made these statements to Plaintiffs on or about November 27, 2013, to induce Plaintiffs to admit Peter to Narconon. Narconon also made these

1  statements on their website, www.rainbowcanyonretreat.org, and Carmichael directed Plaintiffs to

2  the site. Narconon staff made these same false representations to Plaintiffs throughout Peter's stay

3  at Narconon.

4  66. Had Plaintiffs known that any of the above representations Defendants made were false,

5  they would not have admitted Peter to Narconon.

6  67. As a proximate result of Defendants' fraudulent conduct, Plaintiffs have suffered mental

7  anguish, physical injuries, and pecuniary damages in excess of $75,000.00.

## THIRD CAUSE OF ACTION

## NEGLIGENCE

10  68. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set

11  forth in the preceding paragraphs and further allege as follows:

12  69. Defendants owed Plaintiffs a duty to render substance abuse treatment to Peter in a manner

13  that did not subject him to an unreasonable risk of harm. Defendants further had a duty of care to

14  render reasonably safe and effective treatment to him.

15  70. Defendants breached these duties by: (i) instructing Peter to sit in a sauna for 6 hours per

16  day for five weeks while ingesting extreme dosages of Niacin and other vitamins; (ii) failing to

17  staff the Narconon treatment facility, and particularly the sauna, with any qualified medical

18  personnel; (iii) failing to provide duly qualified counselors to administer treatment; and (iv)

19  providing Scientology in lieu of substance abuse treatment.

20  71. As a proximate result of Defendants' breaches of the above duties, Peter suffered physical

21  injuries, mental anguish, and pecuniary injuries in excess of $75,000.00.

## FOURTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

24  72. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set

25  forth in the preceding paragraphs and further allege as follows:

73. Defendants engaged in extreme and outrageous conduct with the intention of causing, or with reckless disregard of the probability of causing Plaintiffs severe or extreme emotional distress. Defendants' extreme and outrageous conduct consisted of, *inter alia*: (i) providing Scientology in lieu drug treatment or substance abuse counseling; and (ii) preying on Plaintiffs' vulnerabilities and attempting to recruit Peter into Scientology under the guise of providing drug treatment.

74. As a proximate result of Defendants' extreme and outrageous conduct, Plaintiff Peter Geanacopulos has suffered severe and extreme emotional distress way beyond what any person in a civilized society should be expected to endure.

## FIFTH CAUSE OF ACTION

## CIVIL RICO FOR MAIL AND WIRE FRAUD, 18 U.S.C. § 1964(c)

75. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

76. Plaintiffs have been injured by Defendants' conduct of an enterprise through a pattern of racketeering activity.

77. Defendants have engaged in a scheme to defraud Plaintiffs and countless others. In furtherance of that scheme, Defendants have committed countless acts of mail fraud and wire fraud under 18 U.S.C. § 1962 within the preceding ten years.

78. Defendants perpetrate this scheme as follows: When prospective patients or their loved ones are referred to Narconon, they then speak to an intake specialist. The intake specialist – following a script – makes claims that Narconon knows to be false and without scientific support such as the claims that Dan Carmichael made to Plaintiffs in this case on or about November 27, 2013. These false claims include: (i) that Narconon has a more than 76% success rate; (ii) that Narconon's sauna program reduces or eliminates drug cravings by eliminating toxins from an addict's fatty tissue; (iii) that patients at Narconon will receive extensive drug counseling; (iv) that

the Narconon program does not involve any religion; and (v) that patients at Narconon will be under the supervision of licensed physicians and other medical personnel.

79. Defendants also mail prospective clients such as Plaintiffs pamphlets making these same false claims to induce them to enter into the program. Defendants refer prospective patients to its website where these false claims are also made. NI and ABLE approve Narconon Fresh Start's marketing materials and scripts that contain these false claims.

80. While a patient is undergoing the program, Defendants prepares the patient to become a Narconon staff member following the patient's completion of the program. In doing so, the patient becomes a counselor for the next wave of incoming patients. This scheme allows Defendants to pay a patient-turned-counselor low wages and Defendants are spared the relatively higher cost of paying duly qualified addiction counselors.

81. In addition, Defendants use their treatment program as a recruiting tool for the Church of Scientology, as evidenced by Defendants' own documents, attached hereto as Exhibits C and D.

82. As a result of Defendants' racketeering activity, Plaintiffs have suffered pecuniary damages and physical injuries.

## SIXTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

83. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

84. The following is a non-exhaustive list of false representations Defendants made to the Plaintiffs: (i) that the Narconon Fresh Start program has a 76% success rate; (ii) that the Narconon program is secular and does not involve the study or practice of any religion; (iii) that Peter would receive counseling related to substance abuse; (iv) that Narconon's sauna program, *i.e*, the Purification Rundown, is safe and has been scientifically shown to be effective; and (v) that Peter would be under the supervision of doctors or nurses at all during times during the program.

13

85.     Dan Carmichael, a Narconon employee, made these statements to Plaintiffs on or about November 27, 2013, to induce Plaintiffs to admit Peter to Narconon. Narconon also made these statements on their website, www.rainbowcanyonretreat.org, and Carmichael directed Plaintiffs to the site. Narconon staff made these same false representations to Plaintiffs throughout Peter's stay at Narconon.

86.     Defendants made these statements to Harry and Lauren Geanacopulos in the course of their business. These statements were for Plaintiffs' guidance in their transaction with Defendants.

87.     Defendants made these statements without exercising reasonable care. Plaintiffs relied on these false statements of fact resulting in substantial pecuniary loss and other injuries to Plaintiffs

88.     Defendants made these representations without using reasonable care.

## SEVENTH CAUSE OF ACTION

## NEGLIGENCE PER SE

89.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

90.     Defendants performed procedures on Peter for which a medical license was required under NRS Chapter 630. Such procedures included having Peter discontinue his prescription medication and having Peter undergo Narconon's sauna and vitamin program.

91.     Peter suffered physical injury as a result of Defendants' unlicensed medical procedures.

## EIGHTH CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

92.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

93.     The contract Plaintiffs Harry and Lauren Geanacopulos entered into with Defendants for Defendants to provide treatment to Peter contained an implied covenant of good faith and fair dealing.

14

94. Defendants acted unfaithfully to the purpose of the contract and Plaintiffs justified expectations by, *inter alia*: (1) having Peter unwittingly study and practice Scientology in lieu of engaging in drug treatment; and (2) attempting to have Peter surrender his legal rights in exchange for services for which Plaintiffs had already provided consideration; and (3) persuading Harry and Lauren Geanacopulos to send Peter to Narconon with promises that Narconon's sauna program would reduce or eliminate his drug cravings by flushing toxins and then asking Peter at Narconon to sign an acknowledgement that the sauna program is not a medical program and that it provides no physical gains.

95. As a consequence of Defendants' breaches, Plaintiffs have suffered damages.

## NINTH CAUSE OF ACTION

## CIVIL CONSPIRACY

96. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

97. Defendants intended to act in concert to accomplish the unlawful objectives of indoctrinating and recruiting Plaintiff Peter Geanacopulos into Scientology under the guise of providing him with drug treatment.

98. Defendants further acted in concert to have non-physicians perform medical procedures on Plaintiff Peter Geanacopulos for which a medical license was required under NRS § 630.160.

99. As a proximate result of Defendants' intentional actions in concert to accomplish unlawful objectives to harm Plaintiff Peter Geanacopulos, he has been harmed.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1  A. Judgment in favor of Plaintiffs and against Defendants for damages in such amounts as may be proven at trial;

2  B. Compensation for special, general damages, and treble damages;

3  C. Reasonable attorney's fees and costs of suit;

4  D. Interest at the statutory rate;

5  E. Punitive or exemplary damages against Defendant;

6  F. All further relief, both legal and equitable, that the Court deems just and proper.

DATED this May 4, 2014.

Respectfully submitted,

By: /s/ Ryan A. Hamilton

RYAN A. HAMILTON, ESQ.
NV BAR NO. 11587
HAMILTON LAW
5125 S. Durango Dr., Ste. C
Las Vegas, NV 89113
(702) 818-1818
(702) 974-1139
ryan@hamiltonlawlasvegas.com

*Attorney for Plaintiffs*