1

2

3

4                  UNITED STATES DISTRICT COURT

5                      DISTRICT OF NEVADA

6                           * * *

7

8

9 HARRY GEANACOPULOS, et al.,         Case No. 2:14-CV-629 JCM (NJK)

10                   Plaintiff(s),             ORDER

11      v.

12 NARCONON FRESH START d/b/a
RAINBOW CANYON RETREAT, et al.,

13

14                  Defendant(s).

15       Presently before the court is a motion to dismiss filed by defendants Association for

16 Better Living and Education International (ABLE) and Narconon International (hereinafter

17 "defendants") pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). (Doc. #13).  Plaintiffs Harry

18 Geanacopulos, Lauren Geanacopulos, and Peter Geanacopulos filed a response to the motion.

19 (Doc. #17). Defendants filed a reply. (Doc. #22).

20 **I.**    **Background**

21       Plaintiffs Harry and Lauren Geanacopulos (hereinafter "plaintiffs") allege that on or

22 about November 27, 2013, they spoke on the telephone with an individual named Dan

23 Carmichael, who claimed to be a Narconon representative. Plaintiffs expressed interest in finding

24 a drug counseling center for their son, Peter, and Carmichael recommended the Narconon Fresh

25 Start (NFS) program in Nevada.

26       According to plaintiffs, Carmichael indicated that the NFS program has more than a 76

27 percent success rate, that there would be a licensed physician on site at all times, and that the

28 program was secular in nature. He directed plaintiffs to the Rainbow Canyon Retreat website at

**James C. Mahan**
**U.S. District Judge**

www.rainbowcanyonretreat.org, which further detailed the NFS program. Relying on representations by Carmichael and the website, plaintiffs paid $30,000 up front to NFS and signed a contract with NFS for Peter's drug treatment.

Plaintiffs allege that upon his arrival at the NFS facility, Peter was mistreated. They claim that he was forced to sign away his legal rights and practice scientology. They further claim that Peter was forced to take dangerously high doses of vitamins and sit in a sauna for 30 hours each week, causing him to suffer from heart palpitations. Plaintiffs allege that there were no medical personnel overseeing Narconon students and that NFS did not treat Peter for his substance abuse problems.

Rainbow Canyon Retreat is a Narconon facility run by NFS, a California corporation with its principal place of business in California. NFS transacts business in Nevada through the Rainbow Canyon Retreat facility.

Defendants ABLE and Narconon International are non-profit organizations incorporated and headquartered in California. ABLE owns the Narconon trademark and licenses it to Narconon International, who sub-licenses it to NFS. Plaintiffs claim that defendants transact business in Nevada through NFS as its parent companies and principals.

Plaintiffs' complaint includes claims for breach of contract, fraud, negligent representation, intentional infliction of emotional distress, mail and wire fraud under RICO, negligence, negligence per se, breach of the implied covenant of good faith and fair dealing, and civil conspiracy. Plaintiffs' claims are based on the representations of Carmichael and the NFS website as well as Peter's alleged mistreatment at the NFS facility. Plaintiffs contend that defendants ABLE and Narconon International are liable under alter ego and agency theories.

**II.      12(b)(2) Dismissal for Lack of Personal Jurisdiction**

**a.  Legal Standard**

To avoid dismissal for lack of personal jurisdiction on the pleadings, a plaintiff bears the burden of demonstrating that his or her allegations would establish a *prima facie* case for personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). A plaintiff must demonstrate jurisdiction over each defendant individually. *Sher v. Johnson*, 911 F.2d 1357,

**James C. Mahan**
**U.S. District Judge**

- 2 -

1365 (9th Cir. 1990). However, allegations in the plaintiff's complaint must be taken as true and considered in plaintiff's favor. *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

Nevada has authorized its courts to exercise jurisdiction over persons "on any basis not inconsistent with . . . the Constitution of the United States." Nev. Rev. Stat. § 14.065. An assertion of personal jurisdiction must comport with due process. *Fiore v. Walden*, 688 F.3d 558, 573 (9th Cir. 2012). For specific jurisdiction, a plaintiff must demonstrate that each nonresident defendant has at least "minimum contacts" with the relevant forum. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

The Ninth Circuit has established a three-prong test for analyzing an assertion of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (internal citations omitted).

"The purposeful availment prong of the minimum contacts test requires a qualitative evaluation of the defendant's contact with the forum state, in order to determine whether [the defendant's] conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003) (citations omitted) (internal quotation marks omitted).

In tort cases, "jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum state." *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Under the "effects test," personal

1    jurisdiction is appropriate where a defendant targeted the forum state with intentional acts and

2    knew that harm would likely be suffered there as a result. *Id.*

3                   **b.  The Court's Jurisdiction Over Narconon International**

4           Defendant Narconon International claims that it has no ownership or control over NFS

5    and is simply its licensor. (Doc. #13). Narconon International lists Rainbow Canyon Ranch on its

6    website, but alleges that this advertising is not directed toward Nevada residents and thus is

7    insufficient for personal jurisdiction.

8           Notably, posting a passive website in the forum state is insufficient to confer personal

9    jurisdiction. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997). Rather,

10   "something more" is required to show that a defendant purposefully directed its conduct in a

11   substantial way to the forum state. *Id.* at 418. This test is met where a defendant targets the

12   forum state through advertising. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019-21

13   (9th Cir. 2002).

14          Narconon International's website, www.narconon.org, lists Narconon drug rehabilitation

15   centers throughout the United States. It includes categories for the Western United States and

16   Nevada in particular. Visitors can click these links and interact with the website to obtain more

17   information. The website lists the NFS facility's address, phone number, email, and a toll-free

18   number.

19          Moreover, Narconon International's website includes particular sections advertising the

20   NFS facility to residents of Reno and Las Vegas based on the facility's proximity to those cities.

21   This type of targeted advertising elevates Narconon International's website from one that merely

22   provides information to one constituting purposeful availment.

23          Additionally, Narconon International's website makes no effort to clarify that Narconon

24   International is an entity distinct from NFS or that it is merely NFS's licensor. This conduct

25   should have put Narconon International on notice that it could be subject to suit in Nevada.

26          Based solely on Narconon International's contacts with Nevada through its website, the

27   court finds that Narconon International is subject to personal jurisdiction in Nevada. If Narconon

28   International wished to avoid suit in Nevada, it could have refrained from advertising Narconon

**James C. Mahan**
**U.S. District Judge**

facilities to Nevada residents on its website or clearly clarified its role as licensor. The possibility of litigation against Narconon International in Nevada was foreseeable based on its advertisement of the NFS facility to Nevada residents.

Further, Narconon International's conduct in Nevada, namely its online advertising and representations about the NFS facility, gave rise to the litigation at issue. While plaintiffs' claims are based on Carmichael and NFS's portrayals of the program, the facility that connects Narconon International to Nevada allegedly caused the harm at issue. Therefore, the second prong of relatedness for specific jurisdiction is met.

Finally, it is not unfair to subject Narconon International to jurisdiction in Nevada based on its contacts with the state. Narconon International concedes that its staff has visited NFS's Rainbow Canyon location twice. Additionally, Nevada is likely the most convenient forum for the plaintiffs and witnesses, as the claims at issue arose from conduct occurring at the NFS facility in Nevada.

For these reasons, the court will deny Narconon International's request for dismissal due to lack of personal jurisdiction.

### c.  The Court's Jurisdiction Over ABLE

Plaintiffs' response to defendants' motion to dismiss alleges that ABLE is subject to personal jurisdiction in Nevada based on its control over NFS's day-to-day operations. (Doc. #17). In particular, plaintiffs claim that certain pamphlets published by Narconon International provide evidence of ABLE's control over NFS.

Notably, all of plaintiffs' specific factual allegations center on the connections of Narconon International, not ABLE, with NFS. ABLE is mentioned only once in the pamphlets, as a source from which Narconon International allows Narconon programs to order books. This is insufficient to confer personal jurisdiction over ABLE.

The many websites to which plaintiffs refer similarly do not provide evidence of ABLE's minimum contacts with Nevada. The only reference to ABLE on these websites addresses its ownership of the Narconon trademark. ABLE's own website makes no mention of Nevada or the NFS facility there. Ownership or licensing alone of the Narconon trademark is insufficient to

**James C. Mahan**
**U.S. District Judge**

- 5 -

confer personal jurisdiction over ABLE.

Plaintiffs alternatively argue that the contacts of NFS may be imputed to ABLE under an alter ego theory. To prove personal jurisdiction on this basis, a plaintiff must ultimately show "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (quoting *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)).

Plaintiffs' complaint alleges the following:

54.    Defendants Narconon Fresh Start and [Narconon International] have all appearances of being a corporate sham illusion and mere instrumentalities of Defendant ABLE.

55.    ABLE heavily influences Narconon Fresh Start and [Narconon International] and governs and controls nearly every aspect of their business activities.
56.    There is such unity of interest and ownership among Narconon Fresh Start, [Narconon International], and ABLE that they are inseparable from one another.

57.    The separate corporate existences of Narconon Fresh Start, [Narconon International], and ABLE is [sic] a design or scheme to perpetrate a fraud . . . to recruit for and promote the Scientology religion.

(Doc. #4). Based on the foregoing standard, the court must take these allegations as true if they are plausible.

Notably, ABLE, Narconon International, and NFS are connected through the licensing and sublicensing agreements of the Narconon trademark. Further, plaintiffs allege that the pamphlets cited provide evidence of ABLE's control over NFS operations. While these allegations are not sufficient to prove plaintiffs' claims against ABLE, they are sufficient to preclude dismissal for lack of personal jurisdiction.

Plaintiffs also argue that personal jurisdiction over ABLE is appropriate based on an agency theory. Courts will impute contacts of an agent to a principal where the agent is a subsidiary that was "either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself." *Chan v. Society Expeditions, Inc.*,

James C. Mahan
U.S. District Judge

- 6 -

1    39 F.3d 1398, 1405 fn. 9 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406

2    (9th Cir. 1977)).

3         Plaintiffs state that without NFS's services, "there would be no Narconon patients to sell

4    the program." (Doc. #17). For the reasons above, plaintiffs' allegations are sufficient to allow

5    plaintiffs to proceed against ABLE. Plaintiffs allege sufficient facts that, when taken as true,

6    meet the test for personal jurisdiction. Namely, if plaintiffs ultimately show that ABLE acts as an

7    alter ego or principal to NFS, ABLE's connections to Nevada will meet the minimum contacts

8    test.

9         For the foregoing reasons, the court will deny ABLE's motion to dismiss for lack of

10   personal jurisdiction.

11   **III.    12(b)(6) Dismissal for Failure to State a Claim**

12        Plaintiffs allege that defendants are liable for breach of contract, fraud, negligent

13   representation, intentional infliction of emotional distress, mail and wire fraud under RICO,

14   negligence, negligence per se, breach of the implied covenant of good faith and fair dealing, and

15   civil conspiracy. They assert that defendants are responsible for NFS's representations and

16   treatment methods under an alter ego or agency theory. These are plaintiffs' only theories of

17   liability against defendants.

18        **a.   Legal Standard**

19        A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief

20   can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and

21   plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2);

22   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require

23   detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic

24   recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

25   (citation omitted).

26        "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550

27   U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual

28   matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation

**James C. Mahan**
**U.S. District Judge**

- 7 -

1  omitted).

2       In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply

3  when considering motions to dismiss. First, the court must accept as true all well-pled factual

4  allegations in the complaint; however, legal conclusions are not entitled to the assumption of

5  truth. *Id.* at 1950. Mere recitals of the elements of a cause of action, supported only by

6  conclusory statements, do not suffice. *Id.* at 1949.

7       Second, the court must consider whether the factual allegations in the complaint allege a

8  plausible claim for relief. *Id.* at 1950. A claim is facially plausible when the plaintiff's complaint

9  alleges facts that allow the court to draw a reasonable inference that the defendant is liable for

10  the alleged misconduct. *Id.* at 1949.

11       Where the complaint does not permit the court to infer more than the mere possibility of

12  misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief."

13  *Id.* (internal quotations omitted). When the allegations in a complaint have not crossed the line

14  from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

15       The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d

16  1202, 1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of

17  truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of

18  action, but must contain sufficient allegations of underlying facts to give fair notice and to enable

19  the opposing party to defend itself effectively. Second, the factual allegations that are taken as

20  true must plausibly suggest an entitlement to relief, such that it is not unfair to require the

21  opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

22       **b.  Discussion**

23       Plaintiffs assert claims against defendants ABLE and Narconon International on the basis

24  that they are the principals and alter egos of NFS. Nevada courts will find a defendant liable

25  under an alter ego theory if the plaintiff proves three factors by a preponderance of the evidence.

26  *Ecklund v. Nevada Wholesale Lumber Co.*, 93 Nev. 196, 197 (1977). First, the corporation must

27  be influenced and governed by the person asserted to be its alter ego. *Id.* Second, there must be

28  such unity of interest and ownership that one is inseparable from the other. *Id.* Third, the facts

**James C. Mahan**
**U.S. District Judge**

must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice. *Id.*

Plaintiffs' complaint alleges that Narconon International "exercises control over the time, manner, and method of Fresh Start's operations." (Doc. #4). Further, plaintiffs assert that "ABLE heavily influences Narconon Fresh Start and [Narconon International] and governs and controls nearly every aspect of their business activities." In support of these allegations, plaintiffs cite to Narconon International pamphlets detailing Narconon International's oversight over Narconon facilities.

Plaintiffs present largely conclusory allegations to show that Narconon International functions as an alter ego of NFS. Nevertheless, in evaluating a complaint for dismissal, the court must take all plausible factual allegations as true. While plaintiffs' complaint alone does not present sufficient evidence to support an alter ego or agency theory, the court will not foreclose plaintiffs' opportunity to do so through discovery. Considering their current allegations regarding Narconon International's oversight of NFS, it is plausible that plaintiffs could show an alter ego or agency relationship.

For these reasons, the court will deny defendants' request for dismissal for failure to state a claim on which relief can be granted.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion to dismiss be, and the same hereby is, DENIED.

DATED August 18, 2014.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 9 -